**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PREMIER CAPITAL CONSULTING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HUNTER FOSTER & ASSOCIATES, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 21-14415 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

     This matter comes before the Court on Plaintiff Premier Capital Consulting, LLC's, ("Plaintiff" or "Premier") motion for default judgment against Defendants Hunter Foster & Associates, LLC ("Hunter Foster"), Andrew Burton ("Burton"), and Garth Miles ("Miles") (collectively, "Defendants")[1]. (ECF No 17.) The Court has carefully considered Plaintiff's written submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, Plaintiff's motion for default judgment is denied.

---

[1] Plaintiff did not move for default judgment against Defendant TMC Energy Group Inc. DBA Energy Investment Program ("TMC Energy"). Plaintiff also named John Does #1-10, Jane Does #1-10, ABC Companies #1-10, and XYZ #1-10 as defendants. (Compl. ¶¶ 10-13, ECF No. 1.)

I.   **BACKGROUND**

  A.   **Factual Background**

Plaintiff, a limited liability company, asserts in its Complaint that this is "a breach of contract action." (Compl. ¶¶ 1, 5, ECF No. 1.) Specifically, Plaintiff asserts that: (1) Hunter Foster and Burton failed to pay Plaintiff for an investment in a real estate rehabilitation project; and (2) Defendants and TMC Energy failed to pay Plaintiff regarding an acquisition of an energy services company. (*See generally id.*) Defendant Hunter Foster is a limited liability company, and Defendant TMC Energy is a corporation—both entities are known to conduct business in New Jersey. (*Id.* ¶¶ 6, 8.) Burton is the executive facilitator of Hunter Foster,[2] and Miles is the chairman of TMC Energy. (*Id.* ¶¶ 7, 9.)

On or around November 2020, Burton contacted Geoffrey Palermo ("Palermo"), a Manager at Premier,[3] regarding "an investment of funds from Premier to Hunter [Foster] for use in a single[-]family real estate rehabilitation project in Princeton, New Jersey" (the "Princeton Project"). (*Id.* ¶ 16.) The term of investment for the Princeton Project "was to be between fifteen (15) to thirty (30) days with a return of investment ("ROI") of $60,000 for a total of $77,500 owed to Premier." (*Id.*) Plaintiff and Hunter Foster entered into an agreement, and between November 13, 2020, and December 17, 2020, $20,800 was transferred from Plaintiff to Hunter Foster for the Princeton Project. (*Id.* ¶¶ 16-17.)

That same month, Burton also contacted Palermo regarding an $18,000 investment from Premier to Hunter Foster regarding an acquisition offer for Crescent Energy Services ("TMC

---

[2] Plaintiff lists Burton as the Executive Facilitator (Compl. ¶ 7) and sole member of Hunter Foster LLC (Pl.'s Resp. to Order to Show Cause 2, ECF No. 19).

[3] The record indicates that all correspondence between Burton and Plaintiff occurred through Palermo. (*See generally* Compl.; *see also* V.S. of Geoffrey Palermo, ECF No. 1.)

Project"). (*Id.* ¶ 18.) E-mail correspondences between Burton and Palermo detailed the term of investment for an estimate of fifteen (15) business days, with an ROI of $125,000 "for the benefit of TMC Energy and Miles."[4] (*Id.*) On November 20, 2020, $18,000 was transferred from Plaintiff to Hunter Foster for the TMC Project.[5] (*Id.* ¶ 19.)

From December 2020 to May 2021, the relationship between Plaintiff and Defendants began to deteriorate. In early December, Burton and Miles asked for extensions to complete the TMC Project in exchange for an increase in the ROI. (*Id.* ¶ 20.) From March to April 2021, TMC Energy delivered promissory notes to Plaintiff reflecting TMC Energy's intentions to repay its investments. (*Id.* ¶¶ 20, 24.) During this time, Burton and Hunter Foster also delivered promissory notes to Plaintiff. (*Id.* ¶ 24.)

Despite these payment representations, by April 2021, Plaintiff had yet to receive full payments and, as a result, sent default notices to Defendants. (*Id.* ¶¶ 22-23.) In May 2021, Plaintiff received assurances of repayment from both Burton and Miles for their respective projects. (*Id.* ¶¶ 24-27.) Plaintiff alleges that after these assurances, no further payments were made for either the Princeton Project or the TMC Project. (*Id.* ¶¶ 26-27.)

B.   **Procedural Background**

On June 11, 2021, Plaintiff sent a final demand for payment to Defendants and TMC Energy. (*Id.* ¶ 28.) The following month, Plaintiff filed the instant Complaint alleging: (1) Breach of Contract; (2) Unjust Enrichment; (3) Breach of the Duty of Good Faith and Fair Dealing;

---

[4] The Court notes that neither party clarifies the relationship between TMC Energy and Hunter Foster.

[5] The wire transfer of $18,000 from Premier to Hunter Foster lists Debbie Palermo, Principal of Premier, as the account responsible for the transfer. (Compl. Ex. E; *see also* V.S. of Debbie Palermo, ECF No. 1.)

3

(4) Account Stated; (5) Constructive Fraud; (6) Actual Fraud; (7) Civil Conspiracy; and (8) Demand for Attorney's Fees and Court Costs. (*Id.* at 6-16.)

On September 30, 2021, Plaintiff requested a Clerk's entry of default against TMC Energy and Miles; on the same day, the Clerk of Court entered default only against Miles for failure to plead or otherwise defend the action. (*See* Clerk's Entry of Default, ECF No. 6.) On August 1, 2022, Plaintiff requested a Clerk's entry of default against Burton and Hunter Foster for the same reason, which the Clerk of Court granted the next day. (*See* Clerk's Entry of Default, ECF No. 12.) Plaintiff then filed a motion for default judgment against Miles, Burton, and Hunter Foster. (ECF No. 17.) On February 21, 2024, this Court entered an Order to Show Cause regarding whether this Court had diversity subject matter jurisdiction (ECF No. 18), and Plaintiff timely responded (ECF No. 19).[6]

      *i.*    *Plaintiff's Attempts at Service*

On August 2, 2021, a summons was issued against Burton at his address in Ringoes, New Jersey. (Compl., ECF No. 1-1; *see also* Pl.'s Br. in Support of Substitute Service *2, ECF No. 7- 1[7].) A week later, Plaintiff attempted service at the Ringoes address but was unable to complete service upon Burton because Burton "[did] not exist at this address . . . since 2016." (Pl.'s Br. in Support of Substitute Service *2; *see also* May Order 1, ECF No. 8.) That same day, a service

---

[6] Prior to entering default judgment, the Court must determine whether it has subject matter jurisdiction over the claims asserted. *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) (citing *Prudential Ins. Co. of Am. v. Bramlett*, No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010)). The Court notes briefly that Plaintiff has sufficiently demonstrated that there is diversity subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are completely diverse and the amount in controversy exceeds $75,000. (Compl. ¶¶ 2-3, 5-7, 9, 14-15.) *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("[D]istrict courts 'have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and, and [sic] is between . . . citizens of different States.'") (quotation omitted).

[7] Page numbers preceded by an asterisk refer to the page numbers atop the ECF Header.

attempt was made on Burton and Hunter Foster at Hunter Foster's business address located in Somerset, New Jersey. (May Order 1.) The process server was unable to effectuate service at the business address listed in Somerset for Hunter Foster or Burton because no one at the address was authorized to accept service on behalf of the company or Burton. (*Id.*) The process server was also unable to serve Burton at either of Burton's other listed addresses in Franklin Park or Passaic, New Jersey. (May Order 3-4.)

    ii.  *Denial of Substitute Service on Burton*

Unable to effectuate service, Plaintiff requested that this Court authorize substitute service on Burton through publication. (ECF No. 7.) On May 6, 2022, the Honorable Judge Douglas E. Arpert, U.S.M.J., denied Plaintiff's request for substitute service on Burton. (May Order 4.) Judge Arpert held that upon review of Plaintiff's submissions, Plaintiff failed to demonstrate the requisite showing of diligence required for substitute service. (*Id.* at 3.) The issue, according to Judge Arpert, was "not that the Plaintiff ha[d] been unable to *deliver* process to Burton, it is that it ha[d] been unable to *locate* Burton." (*Id.* (emphasis in original).) Judge Arpert noted that Plaintiff compiled a list of physical addresses purportedly associated with Burton, but failed to explain "what, if any, effort was made to determine whether Burton could be located and served at any of [those] addresses." (*Id.* at 4 (stating that "Plaintiff has provided the Court with virtually no information about its efforts to locate Burton").) The Court, therefore, concluded that Plaintiff was "obligated to demonstrate a more diligent search into . . . Burton's whereabouts" and directed Plaintiff to serve Burton within 45 days of the May Order's date. (*Id.*)

A month after Judge Arpert's May Order, Plaintiff filed an affidavit of service, indicating that Burton and Hunter Foster were served at Hunter Foster's business address in Somerset, New

5

Jersey. (ECF Nos. 9, 10.) Specifically, a copy of the summons was left with "a member of the household" named "Ravanna Smart." (*Id.*)

## II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 55[8] authorizes the Court to enter default judgment against "a properly served defendant who fails to plead or otherwise defend an action." *La. Counseling & Family Serv., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the Court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

In considering a default judgment motion, the Court must first ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) (ruling that "[a] default judgment entered when there has been no proper service of the complaint is . . . void. . . ."). Second, the Court must ensure that the "unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citation omitted). In conducting that assessment, the Court assumes as true all factual allegations in the complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Third, the Court considers the following three factors to determine whether entry of a default judgment is appropriate: "(1) whether the party

---

[8] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

seeking default will be prejudiced if default is denied, (2) whether the party subject to default has a meritorious defense, and (3) whether the party subject to default is culpable for the delay in responding." *Salins v. EMR Tech. Sols., Inc.*, No. 21-20125, 2023 WL 7386844, at *5 (D.N.J. Nov. 8, 2023) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). Finally, the Court must conduct "an inquiry to ascertain the amount of damages with reasonable certainty." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) ("In determining the amount, the district court may conduct a hearing." (citation omitted)).

### III. DISCUSSION

Pursuant to Rule 55, Plaintiff moves for default judgment based upon Defendants' failure to "answer, plead, or otherwise defend this case." (Pl.'s Moving Br. 6, ECF No. 17-1.) Plaintiff argues that default judgment must be granted because Plaintiff has properly served Defendants and has received Clerk's entries of default under Rule 55(a). (*Id.*) The Court considers Plaintiff's motion below.

#### A. Personal Jurisdiction

A federal court sitting in diversity must conduct a two-step analysis to determine whether a court has personal jurisdiction over a defendant. "First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates the Due Process Clause of the Fourteenth Amendment." *TD Bank, N.A. v. St. Lawrence Food Corp.*, No. 08-3100, 2009 WL 10690511, at *2 (D.N.J. Nov. 2, 2009) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)). "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due

7

process . . . ." *IMO Indus., Inc.*, 155 F.3d at 259 (stating that personal jurisdiction "depends upon the relationship among the defendant, the forum, and the ligation."). While physical presence within the forum is not required, a "plaintiff must show that the defendant has purposefully directed its activities toward the residents of the forum state . . . or otherwise purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quotations omitted). The plaintiff bears the burden of establishing that a court may exercise personal jurisdiction over the defendants. *Shepler v. Big Sky Resort*, No. 20-6839, 2020 WL 6786028, at *1 (D.N.J. Nov. 2, 2020), *report and recommendation adopted sub nom.*, *Shepler v. Big Sky Resort, LLC*, No. 20-6839, 2020 WL 6785647 (D.N.J. Nov. 17, 2020) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)).

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile" while for a corporate defendant, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alternation in original) (quotations omitted). Here, personal jurisdiction is established over Hunter Foster and Burton because Plaintiff alleges that Burton resides in New Jersey (Compl. ¶ 7), and that Hunter Foster is a limited liability company with a principal place of business in New Jersey and is known to conduct business in New Jersey (*id.* ¶ 6).

The Court, however, does not have general jurisdiction over Defendant Miles, who allegedly resides in Houston, Texas. (*Id.* ¶ 9.) As such, the Court must consider whether it can exercise specific jurisdiction.

"Under Federal Rule of Civil Procedure 4(e), a district court may [only] assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (internal quotation

marks omitted). "New Jersey's long-arm statute provides for the exercise of jurisdiction over non-residents 'to the uttermost limits permitted by the United States Constitution.'" *Shepler*, 2020 WL 6786028, at *1 (quoting *Charles Gendler & Co. v. Telecom Equip. Corp.*, 508 A.2d 1127, 1131 (N.J. 1986)). Accordingly, in assessing specific jurisdiction, the Court asks "whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation and alteration omitted)).

Here, Plaintiff has not met its burden of demonstrating that Miles has any "minimum contacts" with New Jersey. (Affidavit of Service of Summons on Garth Miles, ECF No. 5); *Shepler*, 2020 WL 6786028, at *1. In fact, Plaintiff's Complaint and motion for default judgment are devoid of any allegations concerning specific jurisdiction. (*See generally* Compl.; Pl.'s Moving Br.) The Court, accordingly, is unable to assess and confirm whether the Court has personal jurisdiction over Miles. *See AnnexTelecom Co. v. Brown*, No. 13-4605, 2014 WL 5149101, at *2 (E.D. Pa. Oct. 14, 2014) ("When a court asked to enter default judgment against a party concludes that it lacks personal jurisdiction over the party, the appropriate procedure is to dismiss *sua sponte* for lack of personal jurisdiction." (citation omitted)).

Because Plaintiff fails to demonstrate personal jurisdiction over Miles, the Court proceeds by considering Plaintiff's motion for default judgment against Burton and Hunter Foster only.

### B.  Service of Process

The Court next considers whether Burton and Hunter Foster were properly served by Plaintiff. *Gold Kist, Inc.*, 756 F.2d at 19. Pursuant to Rule 4(e), service upon an individual may be made by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there . . . ." Fed. R. Civ.

P. 4(e)(2)(B). Establishing proper service is integral to determining whether the court has personal jurisdiction over the defaulting defendant. *Barbee v. Amira Nature Foods, Ltd.*, No. 21-12894, 2024 WL 623722, at *2 (D.N.J. Feb. 14, 2024) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1992)). The party asserting the validity of service bears the burden of proof on that issue. *Grand Ent. Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d. Cir. 1993) (citation omitted).

Here, Plaintiff attempted to serve both Burton and Hunter Foster at a Somerset, New Jersey address. (May Order 1.) As noted by Judge Arpert, however, the Proof of Diligence submitted by the process server regarding the initial service attempt at the address on August 9, 2021 indicated that Burton does not reside at that location, and Hunter Foster also does not exist there. (*Id.* at 1 (citing ECF No. 7-2, Ex. C, D).) Yet, when directed by Judge Arpert to serve Burton within 45 days of this Court's Order, Plaintiff directed the process server to return to the Somerset, New Jersey address. (ECF Nos. 9, 10.) The process server subsequently served "a member of the household" named "Ravanna Smart" on behalf of Burton and Hunter Foster, despite not specifying the relationship "Ravanna Smart" had, if any, to either defendant. (*Id.*) Plaintiff, therefore, has failed to establish that whoever was served at the Somerset address was authorized to accept service on behalf of Hunter Foster or Burton. (*Id.* at 1 (citing ECF No. 7-2, Ex. D).)

As to Burton specifically, the Court also notes that Plaintiff failed to demonstrate that the Somerset, New Jersey address is Burton's dwelling or usual place of abode. In fact, Plaintiff's Complaint lists Burton's address to be in Ringoes, New Jersey. (Compl ¶ 7.) As such, even if "Ravanna Smart" was in some way associated with Burton, service was still improper because Plaintiff failed to establish that the Somerset address was Burton's usual place of abode. Moreover, Plaintiff has not demonstrated a more diligent search to locate Burton as previously directed by Judge Arpert, nor has Plaintiff met the requirements for serving an individual under Rule 4(e) or

10

the mirroring New Jersey Court Rules. *See Granger v. Am. E-Title Corp.*, No. 10-4627, 2012 WL 300620, at *4 (D.N.J. Feb. 1, 2012) ("The Court cannot exercise jurisdiction over a party that has not been properly served.") (citing *Reddy v. Medquist, Inc.*, No. 06-4410, 2009 WL 2413673, at *6 (D.N.J. Aug. 4, 2009)).

Accordingly, the Court finds that the Clerk's entry of default against Burton and Hunter Foster[9] must be vacated and Plaintiff's request for default judgment against Burton and Hunter Foster must be denied.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's motion for default judgment (ECF No. 17) is denied. The Clerk's entries of default against Burton and Hunter Foster are vacated. (ECF Nos. 6, 12.) The Court will enter an Order consistent with this Memorandum Opinion.

*[signature]*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[9] The Court notes briefly that because service upon Burton was improper, service upon Hunter Foster must also be found improper. *See* Rule 4(h)(1) (stating that service on a limited liability company may be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). The Court, accordingly, finds that the Clerk's entry of default against Hunter Foster must be vacated and Plaintiff's request for default judgment against Hunter Foster must also be denied. *Lee v. Ahn*, No. 15-5522, 2016 WL 3762939, at *2 (E.D. Pa. July 13, 2016) (setting aside the entry of default where the Court lacked personal jurisdiction over defendants).